LOUISE MORET *vs.* GEORGE A. FULLER COMPANY.

Suffolk.   March 22; 1907. — April 1, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence.   Evidence.*

A person walking on a temporary plank sidewalk, which is maintained in a city street by a contractor with the permission of the city and adjoins a fence enclosing a portion of the permanent sidewalk, while perhaps not justified in proceeding with the same assurance as upon a permanent sidewalk, is not bound to be on the lookout for boards protruding from the fence into the highway.

In an action against a contractor for personal injuries from being struck by a board protruding from a fence enclosing a portion of the permanent sidewalk of a city street while walking on a temporary plank sidewalk adjoining the fence, a permit to the defendant from the street department of the city, authorizing him to obstruct for building purposes the portion of the street where the accident occurred and requiring him to maintain a safe and convenient way for foot travellers, is admissible in evidence as bearing on the control of the defendant over the place of the accident, although this does not make him liable for the plaintiff's injuries unless it further is shown that it was his duty to maintain the fence and temporary sidewalk at the time of the injuries and that he was negligent in the performance of this duty.

In an action against a contractor for personal injuries from being struck by a board protruding from a fence enclosing a portion of the permanent sidewalk of a city street while walking on a temporary plank sidewalk adjoining the fence, if it appears that the defendant originally built the fence and temporary sidewalk under a permit from the city but that at some time before the plain-

tiff's injuries he had transferred their entire control to another contractor who had assumed their charge and maintenance, that at the time of the transfer the fence was safe, and that the plaintiff's injury was due solely to the negligence of the other contractor who frequently removed and replaced the boards of the fence and carelessly left one protruding, the defendant is not liable.

In an action against a contractor for personal injuries from being struck by a board protruding from a fence enclosing a portion of the permanent sidewalk of a city street while walking on a temporary plank sidewalk adjoining the fence, where it appears that the defendant originally had built the fence and temporary sidewalk under a permit from the city but that at some time before the plaintiff's injuries he had transferred their entire control to another contractor who had assumed their charge and maintenance, the plaintiff cannot put in evidence an agreement in writing concerning the care and maintenance of the fence and temporary sidewalk and any liability arising therefrom which is signed only by the other contractor and not by the defendant, if it does not appear that the defendant ever had possession of the agreement or knew of its contents.

TORT for personal injuries received on June 5, 1905, through the alleged negligence of the defendant in permitting the end of a board to extend from a fence adjoining the Siegel Building on Washington Street in Boston over a temporary plank sidewalk on which the plaintiff was walking. Writ in the Municipal Court of the city of Boston dated December 5, 1905.

On appeal to the Superior Court the case was tried before *Aiken,* C. J., together with another action for the same injuries against the members of the firm of Jones and Meehan, who were contractors engaged in constructing a section of the tunnel for the subway under Washington Street at the point in question.

The evidence bearing upon the due care of the plaintiff is described in the opinion. It appeared that the fence from which the board protruded and the temporary plank sidewalk which it adjoined were built under a permit from the street department of the city of Boston, described in the opinion, which was admitted in evidence subject to the defendant's exceptions; that afterwards the firm of Jones and Meehan agreed with the defendant that they would take care of the fence and sidewalk and would be responsible for their condition. The defendant made no use of the sidewalk and did nothing to the fence after the first week in May, 1905.

Against the objection and subject to the exception of the defendant, the plaintiff put in evidence an agreement signed by Jones and Meehan. It did not appear by whom it was prepared. This agreement was as follows:

" Whereas, the George A. Fuller Company in prosecution of its work of constructing the new building for Henry Siegel Company on Washington Street, obtained a permit to occupy the sidewalk on Washington Street, and thereafter erected a temporary plank walk and fence beyond the line of the sidewalk;

" And Whereas, the said George A. Fuller Company has now so far completed its work on said building it is desirous of taking down and removing said plank walk and fence and restoring the sidewalk to its former condition ;

" And Whereas, J. Edwin Jones and Michael Meehan, co-partners, doing business under the name and style of Jones & Meehan have a contract to build a section of the Washington Street subway in front of said Siegel Building, and in the prose-cuting of their work under their contract are desirous of using said plank walk, and fence in their present position;

" Now Therefore, in consideration that said George A. Fuller Company forbears to remove said fence and plank walk, and agrees to permit said Jones & Meehan free use thereof, said Jones & Meehan hereby covenant and agree to keep said plank walk and fence in safe and proper condition, and to hold said George A. Fuller Company, Henry Siegel Company and Welch & Cotting, Trustees, harmless on account of any loss or expense in any way growing out of any claim or suit for personal injury or damage to property, on account of any accident happening on or near said plank walk or fence or in any manner caused by the forbearance of the George A. Fuller Company to remove said plank walk and fence and restore the sidewalk to its former condition.

" For the consideration aforesaid, it is hereby agreed that this agreement may be retroactive, and take effect from June 1st, 1905.

" In Testimony Whereof, the said J. Edwin Jones and Michael Meehan hereunto affix their hands and seals this 13th day of June, 1905.

                                        " Jones & Meehan.
" Witnesses : "

Michael Meehan, one of the members of the firm of Jones and Meehan, on cross-examination testified that his firm had sole

and exclusive control and use of the fence after the first week in May, 1905, that after that date the Fuller Company made no use of the sidewalk for storage and made no repairs on the fence; that none of the defendant's employees or agents worked about or used the sidewalk included by the fence or did anything at all to the fence or to the boards of which it was composed after the first week in May, 1905; that in the first week in May when his firm took over the control of the fence he examined it and found it in good condition and that there were no boards loose; that at the point where the accident was alleged to have occurred the boards of the fence were nailed to a post, were not projecting, and were entirely secure at the time his firm assumed the control of it in the first week in May, 1905; that from time to time it became necessary in his use of the sidewalk to take down the fence at the point where the accident was alleged to have occurred, and that on various occasions between the first week in May, 1905, and the date of the accident the fence at that point had been taken down and replaced in unloading materials upon the sidewalk; that nearly every day materials were placed upon the sidewalk at that point, either by sliding them over the fence or by taking down the rails of the fence, putting the materials through and replacing the rails; that his firm repaired the fence and the board walk from time to time between May 1, 1905, and the date of the accident; that under his direction during that period lanterns were hung out on the fence at night and his firm had sole charge and control of the fence during that period of the time; that under his contract with the Boston transit commission his firm had the right to use the sidewalk along the line of operation for storage purposes and in the exercise of that right they occupied the sidewalk in front of the Siegel Building with the knowledge and consent of the transit commission; that it was necessary in his use of the sidewalk for storage to maintain the fence and board walk in the way in which it was maintained; that at all times since December, 1904, the sidewalk was covered over with planking and that at all times a walk was kept open for travel in front of the Siegel Building.

At the close of the evidence, the defendant requested, among others, the following instructions:

" First. That on all evidence the plaintiff cannot recover from the George A. Fuller Company.

" Second. The issuance of a permit to the George A. Fuller Company by the street department of the city of Boston is no evidence that the defendant company was negligent in maintaining the fence in front of the Siegel Building on Washington Street."

" Sixth. If the jury find that on June 5, 1905, Jones and Meehan had entire charge and control of the fence in front of the Siegel Building on Washington Street, the plaintiff cannot recover against the George A. Fuller Company.

" Seventh. If the jury finds that on June 5, 1905, the defendant George A. Fuller Company did not have charge and control of the fence in front of the Siegel Building, and that the said fence was maintained for the use and benefit of Jones and Meehan, the plaintiff cannot recover against the George A. Fuller Company."

The Chief Justice refused to give these instructions. The jury returned a verdict for the plaintiff in the sum of $200, and also returned a verdict for the plaintiff in the same sum in the action against Jones and Meehan. The defendant alleged exceptions to the refusal of the judge to give the instructions requested by it, and also to the admission in evidence of the permit and of the agreement signed by Jones and Meehan which is printed above.

*C. H. Donahue*, for the defendant.

No counsel appeared for the plaintiff.

RUGG, J. 1. There was ample evidence that the plaintiff was in the exercise of due care at the time of receiving her injuries. Her uncontradicted testimony showed that she " was picking her way along, as there was a ' mix up ' at that point and the street was crowded . . . there were people in front and behind her coming and going " ; and as she was walking on a board walk outside the sidewalk she hit against a " board sticking out of the fence." This is the description of what an ordinarily prudent person would do under like circumstances. The street was not closed for travel and the board walk was an invitation to pedestrians with the implication that it was reasonably safe. While perhaps she may not have been justified in pro-

ceeding with the same assurance as upon a permanent sidewalk, she was at least not bound to be on the lookout for boards protruding into the way. *Leonard* v. *Boston*, 183 Mass. 68.

2. The permit issued on August 10, 1904, and extended to November 1, 1905, by the street department of the city of Boston authorizing the defendant to obstruct for building purposes that portion of the street where the accident occurred and requiring it to maintain " a safe and convenient way for the use of foot travellers . . . and a safe and convenient passage for public travel around " was competent evidence bearing upon the control of the defendant over the place of accident. The mere issuing of this permit, however, was no evidence of negligent maintenance of the fence by the defendant. The probative force of the instrument as to this plaintiff went no further than to indicate, unexplained, responsibility for the existence of the fence. Whether and by whom it was negligently maintained were facts which must have been proved by independent evidence bearing upon its condition at or about the time of the injury. It was therefore error to refuse to grant the second request for instructions.

3. The sixth and seventh requests in effect asked for an instruction that if the defendant had, previous to the plaintiff's injury, given over the entire control of the fence to Jones and Meehan, and they had assumed the charge and maintenance of it, then the plaintiff could not recover of the defendant. In substance this instruction should have been given. There was evidence tending to show facts as assumed in the requests. The owner of premises, who has parted with their control, is not liable to a third person, who suffers injury through their wrongful condition, unless they were in such condition at the time of transfer of control or unless the situation causing injury was contemplated by the owner as a part of the use to which the premises were to be put. If the fence was safe at the time the entire control and responsibility for its maintenance, as between the defendant and Jones and Meehan, passed to the latter, and thereafter, solely through the negligence of the latter, the harm came to the plaintiff, then the defendant would not be responsible. It could not be ruled as law that it was within the contemplation of the defendant that the subway contractors

would so fail to care for the fence in frequently removing and replacing the boards of which it was made, that one would be left protruding in such a way as to hit pedestrians using the walk. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47. *Lufkin* v. *Zane*, 157 Mass. 117. *Oxford* v. *Leathe*, 165 Mass. 254. *Glynn* v. *Central Railroad*, 175 Mass. 510. *Quinn* v. *Crimmings*, 171 Mass. 255. *Wixon* v. *Bruce*, 187 Mass. 232. *Glassey* v. *Worcester Consolidated Street Railway*, 185 Mass. 315.

4. An exception is also saved by the defendant to the admission in evidence of an agreement signed by Jones and Meehan as to the control of the fence. It is not signed by the defendant and it does not appear that the defendant ever had possession of it or knew of its contents. Under these circumstances it should have been excluded. The other requests of the defendant were refused properly.

*Exceptions sustained.*