CITY OF DALLAS v. SHUFORD.

No. 13585.

Court of Civil Appeals of Texas. Dallas.

Jan. 19, 1945.

Rehearing Denied Feb. 23, 1945.

H. P. Kucera, City Atty., and A. J. Thuss, Jr., E. L. Markham, Jr., and R. L. Dillard, Jr., Asst. City Attorneys, all of Dallas, for appellant.

DeShazo & Hyde and Francis M. Chaney, all of Dallas, for appellee.

LOONEY, Justice.

Bessie L. Shuford sued the City of Dallas for damages, alleging that she sustained personal injuries on April 5, 1943, by falling over a pile of dirt placed in front of her residence at 2734 Exline Street by the City. She alleged, and the jury found, that the City was guilty of actionable negligence in the following respects: In placing the dirt in front and at the end of the walkway leading from appellee's house to the sidewalk; in failing to use ordinary care to maintain the sidewalk and parkway (space between sidewalk and curb) in a reasonably safe condition; in failing to have guardrails around the dirt; in failing to have a light or signal to warn pedestrians of its presence at the time and place mentioned. Also found that appellee did not know of the condition of the sidewalk at the time she was injured and did not fail to keep a proper lookout for her own safety. The jury having assessed appellee's damages at $1,000, judgment was rendered accordingly, from which this appeal was prosecuted.

At the outset appellee objects to the consideration of appellant's points of error because too general and not based upon proper assignments in the motion for a new trial. We think these objections overcritical. Each point of error is germane to one or more of the grounds of error alleged in appellant's motion for new trial, as required by subdiv. (b) of Rule 418, Texas Rules of Civil Procedure and presented in such manner as to properly invoke our decision. As we think the rules of briefing have been substantially complied with, appellee's objections are overruled (See Rule 422).

In Point of Error No. 1, appellant insists that the judgment below should be

reversed and the cause remanded because the court erred in failing to direct a verdict in appellant's favor on the ground that appellee was guilty of contributory negligence as a matter of law, and assumed all risk in using the street which she knew was then under construction. Basis for this point of error is found in appellant's objections and exceptions to the court's charge; in its motion for an instructed verdict, and in its motion for new trial.

As we think the judgment below should be reversed for the reason just stated, the pertinent facts will be stated somewhat at length. In the first place, appellee alleged in paragraph 2 of her amended petition: "That prior to the 5th day of April, 1943 (the date appellee was injured), the exact time being unknown to the plaintiff but well-known to the defendant, defendant had excavated or caused to be excavated street and sidewalk for paving and for the purpose of drains or sewer pipes, and installing and moving water meters, and had piled rock and dirt approximately 12 to 24 inches in height and about 8 feet in length, in front of and at the end of the walk leading to plaintiff's home at 2734 Exline Street, being a public street in said City of Dallas; that said rock and dirt were put there and left there by defendant, its agents, servants and/or employees, while they were acting in the due course and scope of their employment for defendant."

For at least six years prior to the date she was injured, Mrs. Shuford, a widow, had lived with her sister, Miss Irene Mitchell, at 2734 Exline Street; they jointly owned the property and had signed the necessary contracts for the street improvement then in progress. Sometime prior to March 5, 1943, the City began the improvement of Exline Street by bringing it and the sidewalk to grade and putting in curbs, gutters, sidewalks and street-paving. This work also necessitated the resetting of gas and water meters, and was in full progress on April 5, 1943, along and in front of block 2700 Exline. At the time of her injury, Mrs. Shuford was employed at the North American plant several miles west of the City of Dallas, and rode to her work each morning with Mr. and Mrs. John F. Ferris, that is, the days they worked. They usually came for Mrs. Shuford about 5:30 A. M., picking her up at the curb in front of her residence. On the morning of April 5, 1943, in response to the automobile horn of Mr. Ferris, appellee came down the walk leading from her front porch out in the direction of where the Ferris car was standing at the curb. It was then dark and she stumbled over a pile of dirt partly on the parkway and the sidewalk running up and down the street at the end of the walk leading to appellee's porch. The porch was only 8 or 10 feet from the place where she fell. There was an electric light on her porch but she failed to turn the light on when she started out to the car, although at that time it was too dark for her to see her way clearly. Mrs. Shuford admitted that she knew the City was working on the street and had been for several weeks, but claimed she did not know of the presence of the particular pile of dirt over which she stumbled. Said it was not there on Thursday, April 1st, when she went to work, and concluded that it must have been put there Friday or Saturday, April 2 or 3, although she did not actually see it when it was placed. Said she did not work on Friday, that being her day off; worked on Saturday and Sunday, April 3 and 4, did not ride with Mr. and Mrs. Ferris, as they did not work on those days, but rode the street car, walking from her front door diagonally across the lot instead of going straight down the walkway; however walked within in a few feet of where the dirt was piled. Appellee's sister, with whom she lived, testified in effect that the dirt over which appellee stumbled was placed there on either Friday or Saturday preceding. The above constitute appellee's allegations and the salient facts bearing upon the question under discussion.

In view of the public street work that was in progress, and its torn-up condition, of which appellee had full knowledge prior to the accident, she could not, in our opinion, assume that the street was reasonably safe for travel. During the progress of the public work, the obligation of the City to maintain the way in a reasonably safe condition for use by the public was necessarily suspended; anyone using the public ways under the circumstances was required to exercise ordinary care to discover obstructions or other dangers. The absence of a guardrail or signal light at the place of the obstruction in question, in our opinion, was immaterial, as appellee had been fully and sufficiently admonished by the abnormal condition of the street to put her on guard requiring the exercise of reasonable care for personal safety—which

we think she failed to do as she walked in darkness towards the parked car at the curb without hesitating or doing anything to discover the presence of an obstruction, when she could so easily have turned on the porch light and discovered the pile of dirt over which she stumbled and fell. Appellee's failure to exercise any care whatever for her own safety, in our opinion, convicts her of contributory negligence as a matter of law, and defeats recovery.

We have been unable to find any case in point from our own courts, but numerous cases in point from courts of other states have been called to our attention, sustaining the conclusions just stated. The Supreme Court of Missouri, in the recent case of Baranovic v. C. A. Moreno Co., 342 Mo. 322, 114 S.W.2d 1043, 1046, held that a person using a street which he knew was under construction took the risk of dangers; among other things, the court said: "This court has several times said: 'It is the settled law in this state that, while a traveler on a public street or sidewalk may ordinarily presume that the way is clear and in good condition, still, if the traveler knows that the sidewalk or street being used by him is torn up or obstructed by public work being done therein, he cannot go forward, relying on the presumption that the way is clear, but must exercise his faculties to see and discover the dangers that he may encounter from such obstructing public work, and if he fails to do so, and is injured thereby, he cannot recover, on the ground that he himself is guilty of contributory negligence, although the public authorities or the contractor doing the work may also have been guilty of negligence.' Sheffer v. Schmidt, 324 Mo. 1042, 26 S.W.2d 592, 596, and cases cited; Waldmann v. Skrainka Construction Company, 289 Mo. 622, 233 S.W. 242; Welch v. McGowan, 262 Mo. 709, 172 S. W. 18." We also cite without quotations the following cases that announced the same doctrine: Wheat v. City of St. Louis, 179 Mo. 572, 78 S.W. 790; Welch v. McGowan, 262 Mo. 709, 172 S.W. 18, 20; Rohmann v. City of Richmond Heights, Mo.App., 155 S.W.2d 378.

As heretofore shown, appellee alleged as grounds of negligence (and the jury so found) that appellant failed to have a guardrail or light as a signal to protect pedestrians using the street from the obstruction. With reference to similar contention made in the case of Cody v. City of Boston, 258 Mass. 267, 154 N.E. 753, 754, where the trial court had directed a verdict in favor of the City, the court said: "In these obvious conditions of the streets a barrier could convey no greater notice that the streets were in process of repair than was evident to the sight and hearing of any user of the ways." In the case of Chapman v. City of Boston, 252 Mass. 404, 147 N.E. 840, plaintiff was held guilty of contributory negligence as a matter of law, in spite of the contention that there were no barriers or guards to indicate that the street was closed to travel or undergoing repairs; the court said: "Whether barriers had been placed to warn travelers that it was not safe to proceed is immaterial. The state of the street was such that the barriers would not have given the plaintiff notice of any conditions she had not already observed. As was said in Compton v. Revere, 179 Mass. 413, 414, 415, 60 N.E. 931, 932, 'but where the condition of the street is such as is shown by the evidence in this case, the condition itself is as strong a notice as any that could be given.'" And in Waldmann v. Skrainka Const. Co., 289 Mo. 622, 233 S.W. 242, 247, plaintiff charged that defendant company was negligent in rendering the sidewalk dangerous to pedestrians by failing to have a light and guardrails at the defect causing the injury; the Supreme Court of Missouri held that the plaintiff was guilty of contributory negligence as a matter of law; among other things, the court said: "The fact that it was dark when she returned made it all the more incumbent on her to look out for dangers and difficulties in passing over this unfinished and temporary crossing, which she knew was not in a completed condition, fitted for ordinary or permanent use by pedestrians." Also see the following cases in point: Compton v. Revere, 179 Mass. 413, 60 N.E. 931, 932; O'Neil v. City of Boston, 263 Mass. 55, 160 N.E. 311, 312; McCarthy v. City of Boston, 266 Mass. 262, 165 N.E. 123; Conklin v. Lincoln Traction Co., 130 Neb. 28, 263 N.W. 674.

■ If correct in our holding that appellee was guilty of contributory negligence as a matter of law, thus defeating her right to recover, it follows necessarily that whether or not appellant was negligent in the respects alleged would be immaterial. However, if necessary to a decision, we would sustain appellant's point of error No. 3 complaining of the error of

the trial court in refusing to direct a verdict in its favor on the ground that it appeared as a matter of law that appellant was not guilty of actionable negligence in placing or causing to be placed dirt on and along the parkway in front of and at the end of the walk leading from appellee's house to the sidewalk, and in permitting same to remain. The dirt over which appellee stumbled and fell was placed by appellant in the necessary prosecution of the street work then in progress, and had remained but a few days. According to the testimony of Miss Mitchell, appellee's sister, the dirt was placed either on Friday, April 2nd, or Saturday, April 3rd. The 4th was Sunday, and it was at 5:30 A.M. on Monday, April 5th, that appellee stumbled over the pile of dirt. These are all the material facts bearing upon the ground of negligence under consideration, which, in our opinion, show as a matter of law that appellant was not guilty of negligence in the respect under consideration; hence the court erred in refusing to direct a verdict for appellant as requested.

In view of another trial, we will dispose of the remaining points of error. It follows from what has been said that we are of opinion the question of unavoidable accident was not suggested by the evidence; hence the court did not err in refusing to submit that issue, as contended by appellant in its point of error No. 2. The precise questions presented in points of error, Nos. 4, 6 and 7, are not likely to arise on another trial; however, as the question presented in point No. 5 doubtless will, or at least may, arise on another trial, same will be disposed of. Appellant contends that the jurors trying the case received instructions in violation of Rule 272, in that the district judge who impaneled jurors for the week (not the trial judge), in connection with oral instructions given, called the attention of jurors to a "Handbook of Information for Jurors" to be found on a table in the Central Jury room, where they loitered until called to serve on a particular case. The question was raised by appellant in its motion for a new trial. Several jurors testified that they read the Handbook and followed the general instructions contained therein. The specific complaint is that the instructions were not signed by the trial judge, were not filed and made a part of the record, and were not submitted to the attorneys for examination and objections.

The Handbook in question was written and copyrighted in 1930 by Honorable Royall Watkins, Judge of the Ninety-Fifth District, Dallas County, Texas. He was moved to write the pamphlet in view of many mistrials caused by the "misconduct of [jurors]," as defined in what is now known as Art. 2234, R.C.S., adopted in 1905, that for the first time in this State permitted jurors to impeach their own verdicts. The paper written by Judge Watkins was designed to guide those selected to render jury service for the week, instructing them in a general way as to their duties, the niceties and proprieties to be observed, and improprieties to be guarded against, such as might vitiate verdicts. The Handbook contained valuable information, generally hidden from the layman, in regard to the jury system, its sanctity and importance as an institution of government; the duty of all good citizens to serve as jurors and, generally, in regard to their duties and responsibilities; information that not only those called to serve as jurors should have, but all intelligent citizens as well. We think, with slight editing, the Handbook by Judge Watkins, as well as the Appendix (part of the pamphlet) by Judge McCallum of the One Hundred First District, would be a valuable addition to the course on Civil Government taught in our schools. So, we conclude that Rule 272 was not violated; that the Handbook in question cannot be construed as an instruction to the jury impaneled to try the case, and contained nothing that in the slightest degree affected the interest of the appellant; hence point No. 5 is overruled.

For reasons heretofore stated, the judgment below is reversed, and as it is not necessary to remand the cause for the ascertainment of any fact, the matter to be decreed being certain, judgment will be here rendered in favor of the appellant in accordance with Rule 434, Civil Procedure.

Reversed and rendered.

YOUNG, Justice (dissenting).

In this, a damage action against the municipality, charging negligence while engaged in a corporate function, claimant cannot be held negligent as a matter of law when the jury has found that she had no previous knowledge of the sidewalk obstruction causing the injury, and that she was exercising a proper lookout in the darkness.

The principle applied by the majority whereby an injured person is deemed negligent as a matter of law is limited to cases of an open and obvious defect or obstruction, with full knowledge of the risk incident to using the way. Referring to the Missouri decision, cited in majority opinion, Baranovic (342 Mo. 322, 114 S.W.2d 1043, supra) knew the barricades were there and lighted; but, the street being downgrade and muddy, an accident resulted from sudden application of his car brakes and skidding; in Sheffer v. Schmidt, plaintiff had been over the highway before and knew of the obstruction and that he must detour, but on his own admission failed to have his car under control; in Waldmann's appeal plaintiff was fully aware of the obstruction by having traversed it several hours before in daytime, but was injured at night on return trip; in the Wheat case claimant knew of the street defect, having driven by it for a year, but on his own testimony was not looking at all; in Welch v. McGowan, the time was daylight, plaintiff knowing of the street condition and barricades, but at time of injury was maintaining no lookout whatever; and in Rohmann v. City of Richmond Heights, the defective condition was in plain view, the general rule being applied that as a matter of law plaintiff had failed to exercise his faculties to discover and avoid obvious dangers.

But surely we have no such case here. Exline Street proper seems to have been in a state of disrepair for sometime prior to April 5, date of injury; Gus Crowley, City construction foreman, testifying that he had finished the curbs and gutters on Exline beginning at Crozier to the West, March 5, working back on sidewalk construction, having gotten to Myrtle Street, but not to the block including 2734 Exline on April 5; that his gang had left no dirt in front of plaintiff's residence, the surplus from previous excavations having already been hauled away; and that upon complaint being made of the dirt pile after the injury, he had sent an employe down and removed it—about a wheelbarrow full. The jury could have attributed the offending dirt and rocks to a shifting of plaintiff's meter by the water department from under her sidewalk to another place some days before; finding, in substance, that plaintiff's fall was proximately caused by the city's failure to use reasonable care in maintaining said sidewalk and parkway in a reasonably safe condition at the time; that the dirt in question was placed by defendant at the end of said walkway, negligently failing to place a guardrail, light or signal around the pile; that plaintiff did not know of said sidewalk condition or that same was under construction, and was in the exercise of a proper lookout for her own safety.

I have found no case and have been cited to none that holds a complainant negligent as a matter of law in the situation thus presented. On the other hand, fact issues are clearly raised for the jury's determination. Impliedly, at least, this fact-finding body has determined that plaintiff's failure to turn on her porch light was not negligence in fact; and yet the majority disregards the jury findings and invades their province by holding that plaintiff's failure to actually discover an unknown danger by use of porch light, in turn demonstrates a failure on her part to "exercise any care whatever for her own safety." The true rule (not applicable here) is observed in Butler v. City of University City, Mo.App., 167 S.W.2d 442, 443, quoting from Syl. 11: "For pedestrian to be contributorily negligent as a matter of law in falling on a defective sidewalk, pedestrian must have had knowledge of the defect and an appreciation of the unreasonable risk involved and have been inattentive, or the defect and its danger must have been sufficiently obvious to have unmistakenly challenged pedestrian's attention had she used due care."

Texas courts uniformly hold that even knowledge by the traveler of a street or sidewalk obstruction is not conclusive of negligence. The question of contributory negligence thus raised is one for the jury under circumstances of the particular case; Gulf, C. & S. F. R. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227; City of Denison v. Sanford, 2 Tex.Civ.App. 661, 21 S.W. 784; Butler v. City of Conroe, Tex.Civ.App., 218 S.W. 557. Use of a highway, though known to be dangerous, is not negligence per se. Marshall & E. T. R. Co. v. Petty, 107 Tex. 387, 180 S.W. 105, L.R.A.1918A, 192. Note also 39 T.J., Streets, Sec. 128, pp. 703, 704, and footnote of cases holding: "But the fact that a person knows or might have known that a street or sidewalk was defective or in a dangerous condition does not necessarily impose upon him the duty of refraining from travelling thereon, or charge him as a matter of law with contributory negligence in using the way

—even at night; * * * Nor does the mere fact that a pedestrian temporarily forgets an obstruction across a sidewalk convict him of contributory negligence as a matter of law." And quoting from 43 C.J., p. 1082: "The mere fact that one using a street or public way had knowledge of the defect or obstruction by reason of which he was injured does not, as a matter of law, constitute contributory negligence precluding a recovery, if in view of such knowledge he exercised reasonable and ordinary care under the circumstances." (P. 1086) "A traveller is not precluded from recovery because he knew of the defect or obstruction, where his knowledge was remote, or imperfect, or insufficient to give a full appreciation of the danger, as where he knew of the generally defective condition of the way, *but had no knowledge of the particular defect which caused the injury.*" (Italics mine.)

Likewise the majority holds (if necessary to a disposition) that defendant was not negligent in law, the reason inferentially being that (1) the City's duty to maintain the way in a reasonably safe condition for use by the public was *necessarily suspended* during progress of public work; and (2) the presence of said dirt pile was as strong a notice of danger as a signal light or guardrail would have been, rendering the latter precautions on part of defendant immaterial. Bearing in mind that plaintiff's knowledge extended only to the street work in progress, and not to the commencing of sidewalk construction and existence of the dirt at end of her lead walk (as found by the jury) I respectfully dissent from above conclusions, as not applicable to the record facts, because:

First, at the time, Exline Street in plaintiff's residence block was apparently not closed; to the contrary was accessible to the public. There is no "suspension" of municipal responsibility for injury on a street or sidewalk, though under repair or construction, unless the way be barricaded or otherwise closed to public use. See Myers v. City of Louisville, 274 Ky. 764, 120 S.W.2d 221, 119 A.L.R. 837, and annotations beginning page 841. "According to the weight of authority, the duty of public authorities to keep highways reasonably safe for travel is not abrogated or suspended by the fact that the highway is being repaired. If it is left open to public travel, the controlling authority must exercise ordinary care and take reasonable precautions to prevent injuries to travelers thereon." 25 Am.Jur., Sec. 400, pp. 697, 698.

Second, as to the argument that the dirt pile of itself was ample notice, I can only reiterate that the injury occurred at nighttime, and though plaintiff knew of the street construction, she did not know that same had extended to her sidewalk and parkway.

In brief, the common-law rule of ordinary care being applicable to plaintiff and defendant municipality alike on the occasion in question, City of Port Arthur v. Wallace, 141 Tex. 201, 171 S.W.2d 480, I insist that all issues here raised were for the jury's determination. In contrast, the majority rules that appellant had no cause of action ab initio.

This is not such a case as admits of only one conclusion concerning plaintiff's negligence and defendant's nonliability, and the resulting jury submission was proper. Their answers having support in competent testimony, the judgment under discussion should be affirmed.